JOHN C. FINGLAS *vs.* ELIZABETH F. SULLIVAN.

Bristol.   October 31, 1955. — February 2, 1956.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Will,* Validity.   *Unsound Mind.   Undue Influence.*

Reported evidence of the circumstances of the making of a contested will
executed at a hospital while the testator was seriously ill from a heart
attack and giving substantial legacies to various relatives, including
his only daughter and her children, and the residue to an old and in-
timate friend did not show that the judge of probate was plainly wrong
in finding that the testator had testamentary capacity and in failing
to find undue influence, or that there was error in a decree allowing the
will.

PETITION, filed in the Probate Court for the county of
Bristol on February 17, 1953, for proof of a will.

The case was heard by *Considine,* J.

In her brief the contestant contended that the judge "was
plainly wrong . . . in finding the decedent was competent
at the time of signing [the alleged will], and in failing to
find undue influence."

*Morris Michelson,* for the contestant.

*William A. Torphy,* for the proponent, submitted a brief.

QUA, C.J.   This is a petition for the probate of the alleged
will of James E. Touhey, late of Fall River, filed by the per-
son named as executor therein.   The judge of probate al-
lowed the will and made findings of material facts.   The
evidence is reported at length.

The judge found that the will was properly executed;
that the deceased had testamentary capacity, and "under-
stood what his property consisted of, and those relations
who naturally had some claim on his remembrance"; that
his mind was free from delusion; that he comprehended the
nature and effect of his will; that he had the capacity to
make it and did make it; and that "this is his properly
executed will."

The will gives legacies of $2,000 each to a sister of the deceased with whom he was living at the time of his decease, to her two sons, nephews of the deceased, to two other sisters who lived together, and to the deceased's only daughter and each of her three children, grandchildren of the deceased. An automobile and the residue of the estate were given to John C. Finglas who was named as executor without sureties. The daughter of the deceased is the appellant.

There was ample evidence of due execution, and no serious question seems to be raised on this point.

The evidence discloses several circumstances which normally would create doubt as to the testamentary capacity of the deceased and as to whether undue influence had been exerted upon him. The will was executed in a hospital to which the deceased had been taken the day before because of a severe coronary occlusion. He died on the third day after the will was executed and was undoubtedly seriously and dangerously ill at the time of the execution. Finglas, who was named as executor and residuary legatee, was in the room while a crude memorandum was prepared for the attorney who drew the will, who had been requested to step out while this memorandum was being jotted down. Finglas even took some part in writing it and was present while the will was executed. It would have been better if these things had not occurred. On the other hand, the testimony of the witnesses to the will was clear and positive as to the mental condition of the deceased at the time of execution. There was evidence that he engaged in some good natured banter with one of the witnesses to the will. Neither of the physicians who attended the deceased would go so far as to testify in substance that the deceased lacked mental capacity. His disease was not one which would necessarily affect his understanding. During the evening after the execution he made inquiries as to the progress of a prize fight in which he was interested. The instrument offered for probate was not an inherently unreasonable disposition of his property. It was natural that he should remember the sister with whom he was living, and her children,

if he saw fit.   He did not forget his other sisters, even if he did not mention the children of one of them.   It is very plain that the relations of the deceased with his daughter were something less than cordial since the time when he ceased to live with her and went to live with his sister.   Yet he did not cut her off entirely.   He gave her and her children the largest aggregate of legacies given to any of the family groups.   Finglas was an old friend of the deceased.   Both had lost their wives, and it could have been found that they had been very intimate in recent years.   On one view of the evidence it could have been found that Finglas's activities at the hospital proceeded from a friendly desire to be helpful without mercenary motive.   The record is silent as to the value of the estate unless we include the alleged statement of the deceased that he guessed that there would be enough to pay the legacies and that the balance would be for Finglas.   It may be that Finglas will actually receive little or nothing.   The burden of proof as to undue influence is upon the contestant.   *McMackin* v. *McMackin,* 283 Mass. 452, 456.

We have not attempted anything like a complete summary of the evidence.   We have considered all of it.   We cannot say that the judge was plainly wrong in any of his conclusions or that there was error in allowing the will.

The contents of the copy of an income tax return signed by the deceased at the time when he signed the will were without significance, and the admission of the copy was inconsequential.

*Decree affirmed.*